IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:24-CV-01107-KDB-DCK

| | |
|---|---|
| GLOBAL EXISTENCE FOUNDATION, AND NICOLE ABRAMS-KELLY, <br><br> Plaintiffs, <br><br> v. <br><br> GEICO INSURANCE CORPORATION, MODERN AUTOMOTIVE NETWORK, MICHAEL FEIEREISEL, AND AMANDA YETT, <br><br> Defendants. | **ORDER** |

**THIS MATTER** is before the Court on initial review of Plaintiff's[1] Complaint (Doc. No. 1), Motion to Proceed in forma pauperis (Doc. No. 2) and Amended Motion to Proceed in forma pauperis (Doc. No. 4). For the reasons stated below, the Court will consider the pending motion without requiring Plaintiff to pay the otherwise required fees, but will dismiss this action, which is finds to be legally frivolous.

---

[1] Plaintiff Global Existence Foundation is alleged to be a corporation. A corporation may not represent itself in federal court (and in any event the connection of the corporation to the claims asserted is not alleged). *See Tailored Chem. Prods., Inc. v. Dafco Inc.,* No. 521CV00069KDBDSC, 2022 WL 18401011, at *1 (W.D.N.C. Dec. 20, 2022). Therefore, for the purposes of these motions and the Court's initial review, the Court will refer only to the individual Plaintiff Nicole Abrams-Kelly's claims.

1

## I. BACKGROUND

In May 2006, Plaintiff purchased a new 2006 Nissan Armada from Modern Nissan of Lake Norman ("MNLN"). Doc. No. 1-1 at 8. In November 2010, the vehicle was involved in a collision, during which Plaintiff alleges that the airbags failed to deploy. *Id.* at 8, 10. Five years later, in 2015, Plaintiff reported the airbag failure, along with a separate brake issue, to the National Highway Traffic Safety Administration's Office of Defects Investigation ("NHTSA"). *Id.* After reviewing their databases, the NHTSA reported to Plaintiff that the Nissan in question was not subject to any recalls involving the airbags or brakes and it could not identify any safety defect trends with 2006 Nissan Armada vehicles. *Id.*

In addition, Plaintiff provides numerous documents, including the 2010 accident report (*id.* at 5); a November 2010 receipt from Toyota Scion of North Charlotte indicating repairs (but not what the specific repairs were) after the 2010 accident (*id.* at 6); a December 2010 receipt from MNLN where Plaintiff complained of "excessive brake noise post collision" but upon inspection of the brake pads and rotors no issue was found (*id.* at 7); an August 2015 complaint to the Better Business Bureau, reporting that Plaintiff had four repair attempts since the 2010 collision and "problem persist[e]nt" (*id.* at 8-9); a February 2017 receipt from MNLN after Plaintiff had the vehicle towed for not starting, which noted that the "battery terminals [were not] connected to [the] battery replacement," and were subsequently replaced (*id.* at 16); and that the dealership "salvaged" the vehicle in October 2018 (Doc. No. 1 at 4).

In sum, Plaintiff alleges her vehicle is a "lemon," and it should be replaced or she should be refunded. Doc. No. 1 at 3. Because Defendants have not concluded that Plaintiff's vehicle is a "lemon" and have not replaced or refunded her for the vehicle, she filed suit, asserting federal law violations of 79 Fed. Reg. 3537, 49 U.S.C. § 13902, and 49 C.F.R. §§ 365 and 368.

## II. MOTION TO PROCEED IN FORMA PAUPERIS

Plaintiff's application to proceed in forma pauperis shows that in July of 2019, she had $0 in gross and take-home wages. Doc. No. 2 at 1. She denies any further income from employment; rent, interest, or dividends; pension, annuity, or life insurance; or disability or worker's compensation. *Id.* In her amended application, Plaintiff states that she is expecting $285 in income from employment in the next month, along with $8,000 in child support—for two adult children aged 25 and 28, $5,040 in unemployment benefits, and $140,000 from "North Carolina Treasurer Claims #10093429(3)." Doc. No. 4 at 1-3. She further suggests that she has income pending from her employment as a federal contractor between July 2019 and August 2024. *Id.* In addition, with respect to assets, she reports having $140,516.96 and lists "NC Treasurer" as her financial institution. *Id.* She also owns a house, which she values at $320,000 and a vehicle—which is the "salvaged" 2006 Nissan Armada that is the subject of her lawsuit—that she values at $63,000 (although given the circumstances it is unclear if she contends this is the current value). *Id.* at 3. Plaintiff's expenses include $1,276.75 in medical and dental expenses. *Id.* at 4. Other expenses, including rent/mortgage, utilities, and insurance are identified as "pending." *Id.* Adding more uncertainty, Plaintiff reports having no home maintenance, food, clothing, laundry or dry cleaning, transportation, recreational, or installment payment (such as a credit card) expenses. *Id.*

Accordingly, much of Plaintiff's income and assets are hypothetical, and Plaintiff has not provided a complete list of her expenses. Thus, it is decidedly uncertain whether Plaintiff qualifies to proceed in forma pauperis. However, the Court will—only for purposes of this motion—consider Plaintiff to be eligible to proceed in forma pauperis and perform an initial review of her claims.

### III. LEGAL STANDARD

When a Plaintiff proceeds in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i-iii). In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989).

Further, even if the Court ultimately determined that Plaintiff does not qualify to proceed in forma pauperis, every filing in this Court is subject to review pursuant to the inherent authority of this Court to confirm that a plaintiff has standing and the case is not frivolous. *See Ross v. Baron*, 493 F. App'x 405, 406 (4th Cir. 2012); *Ferguson v. Wooton*, 741 F. App'x 955 (4th Cir. 2018) (collecting cases and explaining that "[f]rivolous complaints are subject to dismissal pursuant to the district court's inherent authority, even when the plaintiff has paid the filing fee" and that "dismissal prior to service of process is permissible when a court lacks subject matter jurisdiction over a patently frivolous complaint"); *Smith v. Kagan*, 616 F. App'x 90 (4th Cir. 2015) ("Frivolous complaints are subject to dismissal pursuant to the court's inherent authority, even when the plaintiff has paid the filing fee); *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363–364 (2d Cir. 2000). "[I]t is well established that a court has broad inherent power sua sponte to dismiss an action, or part of an action, which is frivolous, vexatious, or brought in bad faith." *Brown v. Maynard*, No. L–11–619, 2011 WL 883917, at *1 (D. Md. Mar. 11, 2011) (citing cases). Therefore, a court has "the discretion to dismiss a case at any time, notwithstanding

4

the payment of any filing fee or any portion thereof, if it determines that the action is factually or legally frivolous." *Id.*

Finally, this Court is required to liberally construe pro se complaints, which are held to a less stringent standard than those drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller,* 901 F.2d 387; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions").

## IV. DISCUSSION

Accepting Plaintiff's allegations as true, and making all reasonable inferences in her favor, the Court finds that Plaintiff has asserted legally frivolous claims against Defendants. Plaintiff relies on a federal statute and two federal regulations in support of her claim that her vehicle is a "lemon." However, they are all related to federal motor carriers—which Plaintiff has not asserted she is—including motor carrier safety violations, registration of motor carriers, rules governing applications for operating authority, and applications for certificates of registration to operate in municipalities in the United States on the United States-Mexico international border or within the commercial zones of such municipalities. *See* 79 Fed. Reg. 3537 (Jan. 22, 2017), 49 U.S.C. § 13902, 49 C.F.R. §§ 365, 368. A "motor carrier" is a person who provides motor vehicle transportation [of passengers, property, or hazardous materials] via vehicle, machine, tractor,

trailer, or semitrailer for compensation. 49 U.S.C. §§ 13102(14), (16).[2] Thus, the federal violations asserted are wholly untethered from Plaintiff's claim that her vehicle is a "lemon."

Moreover, even if Plaintiff properly asserted a claim under the Magnuson-Moss Warranty Act ("MMWA") or the North Carolina Lemon Law statute, it would fail as a matter of law under the facts provided. *See* 15 U.S.C. § 2301, *et seq.*, N.C. Gen. Stat. § 20-351. "The MMWA provides a federal remedy for breach of warranty," *Sasso v. Tesla, Inc.*, 584 F. Supp. 3d 60, 76 (E.D.N.C. 2022), *aff'd sub nom. Challenge Printing Co. of the Carolinas, Inc. v. Tesla, Inc.*, No. 22-2057, 2024 WL 2795180 (4th Cir. May 31, 2024), supplementing, rather than supplanting state law. *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 545 (D. Md. 2011); *see Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 291 (4th Cir. 1989). The MMWA allows for a private cause of action, stating: "Subject to subsections (a)(3) and (e), a consumer who is harmed by a supplier, warrantor, or service contractor's failure to fulfill any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may file a lawsuit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). Under this provision, a plaintiff can make a claim "by alleging either a violation of the MMWA's substantive provisions or by meeting the requirements for a state-law cause of action." *Blackman v. Boston Whaler, Inc.*, 649 F. Supp. 3d 142, 153 (E.D.N.C. 2023) (quoting *Collette v. Sig Sauer, Inc.*, No. 21-11392-FDS, 2021 WL 6052613, at *5 (D. Mass. Dec. 21, 2021).

---

[2] *See* Fed. Motor Carrier Safety Admin., U.S. Dep't of Transp., *What are the Definitions of Motor Carrier, Broker and Freight Forwarder Authorities?*, available at https://www.fmcsa.dot.gov/faq/what-are-definitions-motor-carrier-broker-and-freight-forwarder-authorities-:~:text=A%20motor%20carrier%20operates%20commercial%20motor%20vehicles%20%28CMV%E2%80%99s%29,power%20units%2C%20or%20it%20could%20be%20an%20owner-operator.

6

"To determine whether there has been a breach of a written or implied warranty in violation of the MMWA, courts must apply applicable state express and implied warranty law." *Id.* (quoting *Johnson v. Ford Motor Co.*, No. 3:13-6529, 2015 WL 7571841, at *16 (S.D.W. Va. Nov. 24, 2015); *see Carlson*, 883 F.2d at 291. Put differently, "when the MMWA claim is premised on borrowed state-law warranty claims, 'MMWA claims stand or fall with the state-law claims.'" *Id.* (quoting *Sasso*, 584 F. Supp 3d at 76), *see Doll*, 814 F. Supp. 2d at 545.

The North Carolina "Lemon Law" applies to new passenger cars purchased in North Carolina and requires manufacturers to repair defects that affect the use, value, or safety of a new motor vehicle within the first 24 months or 24,000 miles, whichever comes first. N.C. Gen. Stat. § 20-351.2. If, during that time, the manufacturer is unable to repair the defects after a "reasonable number of attempts," the manufacturer "shall, at the option of the consumer, replace the vehicle with a comparable new motor vehicle or accept return of the vehicle from the consumer and [provide a refund]." N.C. Gen. Stat. § 20-351.3. Plaintiff doesn't allege any defects during the first two years after the car was purchased or within 24,000 miles, instead asserting that the issues began four years past the car's purchase in 2010, after the car was involved in a collision (when the vehicle had over 88,000 miles on it). (Doc. No. 1-1 at 8). Therefore, Plaintiff has no viable state law claim under the North Carolina Lemon Law, and any warranty claims Plaintiff might assert under MMWA also fail. Accordingly, the Plaintiff's claims are legally frivolous, and the Court will dismiss them without prejudice.

## V.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiff's Motion to Proceed in forma pauperis (Doc. No. 2) and Amended Motion to Proceed in forma pauperis (Doc. No. 4) are **GRANTED** for the limited purpose of the Court's initial review;

2. Plaintiff's claims are **DISMISSED** without prejudice (Doc. No. 1); and

3. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: January 4, 2025

Kenneth D. Bell
United States District Judge